JAMES L. GREEN & another[1] vs. COMMISSIONER OF REVENUE.

Suffolk. February 4, 1982. — May 28, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & O'CONNOR, JJ.

*Taxation,* Income.

A taxpayer engaged in the operation of a mail order business which became insolvent who was required to pay a sum pursuant to his personal guaranty of a debt owed by the business which he later treated as a business bad debt loss on his State income tax return, and who realized a capital gain from the sale of real property held as part of his commercial real estate business in excess of the amount of the guaranty loss, making the loss deductible under the Internal Revenue Code § 62(4), was permitted to deduct the business bad debt loss from his Part B income under G. L. c. 62, § 2 (*d*), and then offset business-connected Part A income by excess Part B deductions. [352-353]

APPEAL from a decision of the Appellate Tax Board.

The case was submitted on briefs.

*Robert J. McGee* for the plaintiffs.

*Francis X. Bellotti,* Attorney General, *Linda M. Irvin & Paul R. Matthews,* Assistant Attorneys General, for the defendant.

O'CONNOR, J. The taxpayer is in the business of owning and operating commercial real estate. He was also the president and sole shareholder of Eleganza, Inc., a mail order business. Eleganza, Inc., became insolvent in 1975, and the taxpayer was required to pay $170,000 pursuant to his personal guaranty of a debt owed by Eleganza, Inc. Insolvency rendered the taxpayer's claim against Eleganza, Inc., worthless. The taxpayer sold a parcel of land that he

---

[1] Barbara Green, the taxpayer's wife. The tax return at issue here was the Greens' joint return. The husband will hereafter be referred to as the "taxpayer" for the sake of convenience.

had held as part of his real estate business in 1975, realizing a capital gain of $184,891.

The taxpayer treated the $170,000 guaranty payment as a business bad debt loss on his 1975 State income tax return, deducting it first from his Part B income and then offsetting his Part A income by $134,040 in excess Part B deductions. G. L. c. 62, § 2 (b), (c) (1), (d).[2] The Commissioner of Revenue (Commissioner) disallowed the $134,040 deduction from Part A income, but did not reject the initial deduction from Part B income. The taxpayer applied for an abatement of the additional tax imposed. The application was denied and the Appellate Tax Board (board) affirmed without a written decision.

It is not clear from the record on what basis the Commissioner rejected the deduction from Part A income but accepted the deduction from Part B income. It appears that the Commissioner initially concluded that, regardless of whether the loss was a business or a nonbusiness loss, it was deductible from Part B income pursuant to G. L. c. 62, § 2 (d), but that the excess was not deductible from Part A income because the $184,891 gain was not "effectively connected with the active conduct of a trade or business of the taxpayer." G. L. c. 62, § 2 (c) (1), as amended by St. 1973, c. 723, § 2.

However, that position can no longer be maintained because in answering the taxpayer's petition to the board, the Commissioner admitted that the real estate sold to obtain the gain "had been held . . . as part of taxpayer's business of owning and operating commercial real estate."

The Commissioner's position before the board, reasserted here, was apparently that the loss was not deductible from

---

[2] General Laws c. 62, § 2 (b), divides gross income into two categories: Part A income includes most dividends, interest, and net capital gains; Part B income includes all other gross income. Part A income is taxed at a higher rate than Part B income. G. L. c. 62, § 4. Certain deductions allowable under the Federal Internal Revenue Code may be deducted from Part B income, and if those deductions exceed Part B income, the excess may be deducted from any Part A income that is effectively connected with the taxpayer's trade or business. G. L. c. 62, § 2 (c), (d).

Part A income because it was not deductible from Part B income. She argues that the loss was not deductible from Part B income because it was a nonbusiness loss and there was no capital gain against which to offset the loss, as required by the Internal Revenue Code (I.R.C.). See I.R.C. §§ 62(4), 165(f), 1211(b)(1) (1976 & Supp. III 1979). This position overlooks the Commissioner's stipulation before the board that the $184,891 gain was a capital gain.

We assume, as did the Commissioner, that the taxpayer's bad debt loss was a nonbusiness loss. Nonbusiness bad debt losses are, for Federal tax purposes, short term capital losses. I.R.C. § 166(d)(1)(B) (1976 & Supp. III 1979). Short term capital losses are deductible under Federal law, but only to the extent of capital gains. I.R.C. §§ 62(4), 165(f), 1211(b)(1). Deductions allowable under I.R.C. § 62 are, with certain exceptions not relevant here, deductible from Massachusetts Part B income. G. L. c. 62, § 2 (d). The taxpayer had a capital gain from the sale of the business real property in excess of the amount of the guaranty loss, making the loss deductible under I.R.C. § 62(4). The loss was therefore deductible from the taxpayer's Part B income under G. L. c. 62, § 2 (d), and the excess deduction should have been allowed to offset business-connected Part A income. G. L. c. 62, § 2 (c) (1).[3]

*Decision of the Appellate Tax
Board reversed.*

---

[3] The taxpayer did not contend, either on his tax return or before the board, that the guaranty payment should have been allowed to offset the $184,891 capital gain directly as a short term capital loss. This direct offset would have resulted in more favorable tax consequences to the taxpayer since net capital gains are included in Part A income and taxed at a higher rate than Part B income, but this position would have been inconsistent with the taxpayer's position on his Federal tax return. Although the taxpayer does argue here that this would be a result faithful to the terms of the governing statute, he does not contend that he is entitled to more favorable treatment than he claimed on his return.